**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

J. SUPOR & SON TRUCKING &
RIGGING CO., INC.,

       Petitioner,

   v.

TRUCKING EMPLOYEES OF NORTH
JERSEY WELFARE FUND, *et al.*,

       Respondents.

Civil No. 17-13416 (ES) (MAH)

OPINION

**McNULTY, DISTRICT JUDGE**

  This case, originally assigned to Judge Salas, was recently reassigned to me for the purpose of dealing with the pending motion. Now before the Court is the Motion of respondents Trucking Employees of North Jersey Welfare Fund, Inc.-Pension Fund[1] and Teamsters Local 560's ("Local 560") for summary judgment.[2] The motion is opposed by the Petitioner, J. Supor & Son Trucking & Rigging Co, Inc. ("Supor"). Having considered the parties' submissions, the

---

[1]  Respondent is incorrectly identified as "Trucking Employees of North Jersey Welfare Fund."

[2]  Citations to the record will be abbreviated as follows:

  Motion = Respondents' motion for summary judgment, DE 35

  Statement of Material Facts or SMF = Respondents' statement of material facts, DE 35-2

  Supor. Aff. = Affidavit of Joseph Supor III in support of Petitioner's opposition to summary judgment, DE 41-1

  Mov. Br. = Respondents moving brief in support of their motion for summary judgment, DE 35-1

  Opp. Br. = Petitioner's brief in opposition to Respondents' motion for summary judgment, DE 41

1

Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons below, the Local 560's motion for summary judgment is GRANTED.

## I.   Background[3]

This case involves a dispute concerning the withdrawal liability imposed by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). *See* 29 U.S.C. §§ 1381–1461. Congress enacted the Employee Retirement Income Security Act of 1974 ("ERISA") to ensure that workers would receive pensions promised by their employers and to provide a regulatory structure for any legal issues that arose out of these benefit plans. *Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 416 (1995). The MPPAA was Congress's response to a concern that ERISA did not properly protect multiemployer pension plans from the negative consequences resulting from an individual employer's decision to cease its participation in a benefit plan. *Flying Tiger Line v. Teamsters Pension Tr. Fund of Phila.*, 830 F.2d 1241, 1243–44 (3d Cir. 1987). Accordingly, the MPPAA requires an employer to pay withdrawal liability to the multiemployer plan if the employer withdraws from such plan. 29 U.S.C. § 1381(a).

Supor is a construction contractor who worked at the "American Dream"

---

[3]   Petitioner J. Supor & Son Trucking & Rigging Co., Inc. ("Petitioner") did not respond to Respondents' statement of material facts or file its own supplemental statement of disputed material facts. *See* L. Civ. R. 56.1 ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement . . . . In addition, the opponent may also furnish a supplemental statement of disputed material facts . . . ."). Instead, Petitioner filed a certification of its president, Mr. Joseph Supor III, who provides statements regarding, *inter alia*, circumstances that allegedly led to the agreement between the parties that is at issue in the instant case. Because Petitioner does not dispute Respondents' factual statements, the Court derives the factual background from Respondents' Statement of Material Facts. *See* L. Civ. R. 56.1 (providing that "any material fact not disputed shall be deemed undisputed for the purposes of the summary judgment"); *Ruth v. Selective Ins. Co. of Am.*, No. 15-2616, 2017 WL 592146, at *3 (D.N.J. Feb. 14, 2017) ("[A] movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts . . . receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion.").

worksite in New Jersey. (SMF ¶ 1). In connection with the "American Dream" project, on or about March 6, 2007, Supor signed a letter of assent ("Letter of Assent"), which, in relevant part, states the following:

> Pursuant to the above referenced Agreement, the undersigned as duly authorized officers of (Insert Contractor and/or Subtractor name) hereby agrees that it will be bound by and will comply with all terms and conditions of the referenced Agreement and any amendments thereto. Contractor recognizes the Unions, as signatory to the Agreement are the collective bargaining representatives of union members employed on the Project.
>
> The undersigned further agrees that the Collective Bargaining Agreement ("CBA") in effect between the Unions executing the Agreement and Contractor or its subcontractors executing the letter of assent are applicable to the Scope of Construction Work to be performed by our firm, except as such CBA may be modified by the provisions of the Agreement.
>
> This Letter of Assent will remain in effect until the expiration of the Agreement or until our scope of Work at the Project is completed, whichever is later.

(DE 35-4[4] at 6; SMF ¶¶ 2–3). The "Agreement" referenced in the Letter of Assent is the "Project Labor Agreement Between the Bergen County Building & Construction Trades Council, AFL-CLO and Meadowlands Mills/Mack-Cali Limited Partnership" ("PLA"), dated May 18, 2004. (SMF ¶ 2; DE 35-4 at 6 & 8). Article XI, Section 2 of the PLA further states that "[t]he Contractors agree to pay contributions to the established funds in the amounts designated in the appropriate [CBAs] listed in Exhibit 'A'." (DE 35-4 at 26). Relevant to this case, one of such established multiemployer pension funds is defendant Trucking

---

[4]   Docket entry number 35-4 contains various documents relevant to this opinion, including the Letter of Assent (DE 35-4 at 6), the Project Labor Agreement (*id.* at 8–41), the Fund's notice and demand for withdrawal liability (*id.* at 221–22), Petitioner's request for review (*id.* at 226–28), the Fund's response (*id.* at 230–31), and Petitioner's request for arbitration (*id.* at 233). For clarity and accuracy, the Court will cite to the page numbers generated by the Court's Electronic Case Filing (ECF) system.

Employees of North Jersey Welfare Fund, Inc. -Pension Fund ("Fund"). (*See id.* at 33; *see, e.g., id.* at 21). Apparently, pursuant to the PLA, Supor made contributions to the Fund from 2007 to 2015. (SMF ¶¶ 6 & 9–10).

On July 20, 2017, the Fund sent Supor a Notice and Demand for Withdrawal Liability stating that "[Supor] . . . ceased to have obligation to contribute to this Fund" on or around October 31, 2015[5] and was therefore assessed withdrawal liability in the amount of $766,878 "in accordance with [ERISA], as amended by the [MPPAA]." (DE 35-4 at 221–22). In response, Supor requested that trustees of the Fund provide certain information and extend the date by which Supor was to commence monthly payments to the Fund. (*Id.* at 226–28). Supor also contested the amount, schedule, date, and other aspects of the Fund's assessment of Supor's withdrawal liability. (*Id.*). After additional correspondence between the parties, on November 7, 2017, Supor requested arbitration with the American Arbitration Association. (*Id.* at 233). Arbitration is currently being held in abeyance pending resolution of the instant action. (SMF ¶ 18).

On December 20, 2017, Supor filed a petition with the Court ("Petition"), contesting three issues: (i) whether Supor is an "employer" as defined by the MPPAA; (ii) whether Supor is compelled to arbitration, either under statutory or contractual obligations; and (iii) whether Supor is obligated to pay withdrawal liability. (*See generally* DE 1). The Fund moved to dismiss the Petition, arguing that Supor clearly agreed to arbitrate based on contractual agreements between the parties. (DE 9-1 at 11–12 (ECF Pagination)). The Court denied the motion to dismiss, holding that, based on the documents available to the Court at the time, the Fund had not "met its burden of demonstrating that an express

---

[5] The October 31, 2015 date is referenced in the Notice and Demand for Withdrawal Liability letter sent by the Fund on July 20, 2017. (DE 35-4 at 221). Respondents' Statement of Material Facts, however, states that "[t]he Fund determined that [Petitioner] ceased work at the American Dream Project and/or ceased to have an obligation to contribute to the Fund on or about December 31, 2011." (*See* SMF ¶ 11). To the best this Court can glean based on the parties' submissions, the date listed on the letter, October 31, 2015, is the accurate date.

and unequivocal agreement to arbitrate exists." (DE 24 at 3). The parties then proceeded through discovery, and Respondents filed the instant motion for summary judgment. (Motion).

## II.     Legal Standard

A court shall grant summary judgment under Federal Rule of Civil Procedure 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The mere existence of an alleged disputed fact is not enough. *Id.* Rather, the opposing party must prove that there is a genuine issue of a material fact. *Id.* An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is "material" if under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.* On a summary-judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324.

To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Boyle v. United States*, 391 F. App'x 212, 215 (3d Cir. 2010) ("A plaintiff cannot avoid summary judgment with speculation; he must provide competent evidence from which a rational trier of fact can find in his favor."). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*,

63 F.3d 231, 236 (3d Cir. 1995).

### III. Analysis

#### A. The MPPAA's Arbitration Mandate

Under Section 1401(a)(1) of the MPPAA, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." Sections 1381 through 1399 of the MPPAA then provides a framework regarding the applicability, calculation, notification, and collection of an employer's withdrawal liability. After arbitration proceedings have completed, any party may bring an action in the appropriate federal district court to "enforce, vacate, or modify the arbitrator's award." *Id.* § 1401(b)(2).

Supor argues that the contract it signed does not indicate "a clear agreement between the parties to arbitrate." (Opp. Br. at 10). Specifically, Supor argues that the Letter of Assent it signed does not itself contain an explicit agreement to arbitrate, and that the Letter of Assent's reference to the CBA does not specifically mention the CBA's arbitration provision. (*Id.* at 9–10). In light of MPPAA's statutory arbitration mandate, Supor's contractual argument is misplaced.

As the Third Circuit stated, "[t]he arbitration requirement is an important component of MPPAA's scheme to secure the financial health of multiemployer pension plans," partly because arbitration "substantially reduces the expenses incurred by multiemployer plans." *Flying Tiger*, 830 F.2d at 1248. Courts around the country, including the Third Circuit, have repeatedly held that § 1401 of the MPPAA "mandates arbitration for disputes between an employer and the plan sponsor." *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 142 (3d Cir. 1997) (internal quotation marks and emphasis omitted) (quoting *Doherty v. Teamster Pension Tr. Fund of Phila. & Vicinity*, 16 F. 3d 1386, 1390 (3d Cir. 1994); *Steelworkers Pension Tr. by Bosh v. Renco Grp., Inc.*, 694 F. App'x 69, 71 (3d Cir. 2017). "[W]here the party against which withdrawal liability is being

6

asserted was certainly part of the controlled group of an employer subject to MPPAA at some point in time, and where the issues in dispute fall within the purview of MPPAA provisions that are explicitly designated for arbitration, the Act's dispute resolution procedures *must* be followed." *Flying Tiger*, 830 F.2d at 1247 (emphasis added). Here, the parties do not dispute that the essential dispute at issue—whether Supor is obligated to pay withdrawal liability— concerns "a determination made under sections 1381 through 1399" the MPPAA. (*See* Mov. Br. at 10; *see generally* Opp. Br.). It is thus irrelevant whether a clear *agreement* to arbitrate exists between the parties; Supor is required *by statute* to arbitrate the withdrawal liability dispute at issue if it qualifies as an "employer" under the MPPAA.  *See* 29 U.S.C. § 1401(a). For the reasons stated in the following section, it does.

    **B.**    **"Employer" Under the MPPAA**

An "entity's employer status is a legal question to be resolved by the court." *Galgay*, 105 F. 3d at 142. While the MPPAA applies to an "employer" who participated in a multiemployer plan, it does not define what constitutes an "employer" in the context of withdrawal liability. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp. Inc.*, 85 F.3d 1282, 1287 (7th Cir. 1996). The Third Circuit has not yet considered how courts should define an "employer" under the MPPAA. *See Brown v. Astro Holdings*, 385 F. Supp. 2d 519, 527 (E.D. Pa. 2005). However, the Courts of Appeals that have considered this issue have unanimously agreed with the Second Circuit, which held that an "employer" under the MPPAA is "a person who is obliged to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants." *Korea Shipping Corp. v. N.Y. Shipping Ass'n-Int'l Longshoremen's Ass'n Pension Tr. Fund,* 880 F.2d 1531, 1537 (2d Cir. 1989).[6]

---

[6]    *See, e.g., Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*, 630 F.3d 848, 851–52 (9th Cir. 2010); *Int'l Comfort*, 585 F.3d at 284–85; *Mary Helen Coal Corp. v. Hudson*, 235 F.3d 207, 212 (4th Cir. 2000); *Seaway Port Auth. v. Duluth-Superior ILA Marine Ass'n Restated Pension Plan*, 920 F.2d 503, 507 (8th Cir. 1990); *Carriers Container Council, Inc. v. Mobile S.S. Ass'n, Inc.–Int'l Longshoreman's Ass'n*, 896 F.2d 1330, 1343 (11th Cir 1990).

In *Korea Shipping*, the Second Circuit considered two separate appeals concerning whether the steamship carriers were "employers" under the MPPAA. *Id.* at 1532. The steamship carriers did not have their own labor force, but instead would have their vessels loaded and discharged by longshoremen that were directly employed by the stevedoring companies. *Id.* at 1534. Pursuant to CBAs the carriers signed with the stevedoring companies and the longshoremen's union, steamship carriers were obligated to fund the longshoremen's fringe benefit costs. *Id.* at 1533. The steamship carriers resisted an assessment of withdrawal liability, arguing that they were not the longshoremen's direct employers. *Id.* at 1535. After considering the legislative intent behind the MPPAA, the Second Circuit ultimately concluded that an "employer" under the MPPAA included any entity "obligated to contribute to a [pension] plan either as a direct employer or in the interest of an employer of the plan's participants." *Id.* at 1536–37. The court rejected the narrower common law definition of "employer" as inconsistent with the statutory scheme; that narrower definition would "eliminate withdrawal liability for such a significant number of contributors as to threaten those plans' financial viability" and therefore go against the MPPAA's stated purpose. *Id.* at 1537.

The Sixth Circuit adopted *Korea Shipping*'s definition of "employer," noting that the "contributing obligor" definition of employer under the MPPAA, which is Title IV of ERISA, was consistent with the structure of the definition of "employer" under Title I of ERISA. *Int'l Comfort*, 585 F.3d at 284–85. The court stated that, while the common law definition of "employer" looks for "direct employer-employee relationships," Title I's definition "is different in kind" and its "focus is instead upon the entity's relation to an employee benefit plan." *Id.* The Eleventh Circuit, in adopting the same "contributing obligor" definition, additionally stated that "[b]y sweeping in direct employers, indirect employers, intermediaries, and employer associations, the contributing obligor definition ensures that no employer can use intricate corporate structures to avoid withdrawal liability." *Carriers Container*, 896 F.2d at 1343. The Court agrees

with these well-reasoned analyses, as well as similar holdings by district courts within the Third Circuit.[7] I will apply the "contributing obligor" definition in determining if an entity is an "employer" under the MPPAA.

While the parties appear to agree that the prevailing "contributing obligor" definition of "employer" applies in this case (*see* Mov. Br. at 10–14; Opp. Br. at 4), Supor advances two arguments as to why it nevertheless is not an "employer" under the MPPAA. (Opp. Br. at 4–8).

First, Supor argues that it cannot be considered an employer under the MPPAA because it did not sign a CBA or other long-form agreement obligating it to make *long-term* pension contributions. (Opp. Br. at 4–6). However, Supor cites to no law to support the argument that the distinction between short-term and long-term pension contribution obligations is relevant to an entity's employer status. The cases hold more categorically that "the party who is signatory to a contract creating the obligation to contribute is the 'employer' for purposes of establishing withdrawal liability." *Rheem Mfg. Co. v. Cent. States Se. & Sw. Areas Pension Fund,* 63 F.3d 703, 707 (8th Cir. 1995). Courts thus examine whether the party entered into an agreement establishing a contribution obligation at all, not whether that obligation was long-term. *See Seaway*, 920 F.2d at 509. This Court has previously held that signatories to short-term agreements had a contribution obligation, qualifying them as employers under the MPPAA. *See, e.g., N.J. Carpenters Pension Fund,* 68 F. Supp. 3d at 550, 560–561 (holding that a one-page agreement between a housing authority and carpenters' union concerning a contribution obligation from 1996 to 2011 provided "ample indicia" that the housing authority had a contribution obligation and was therefore an employer under the MPPAA).

True, the parties have a factual disagreement as to whether Supor's contribution obligation continued after its work on the "American Dream"

---

[7] *See, e.g., N.J. Carpenters Pension Fund v. Hous. Auth. & Urban Redev. Agency of the City of Atlantic City,* 68 F. Supp. 3d 545, 558 (D.N.J. 2014); *Crown Paper Bd. Co. v. Kappa Bd., Inc.,* No. 87-0194, 1991 WL 136214, at *5 (E.D. Pa July 18, 1991).

project ended. That dispute, however, is not a "material" one for purposes of summary judgment, because it does not affect the outcome. Supor acknowledges that it at least had an obligation to contribute to the Fund for the period that it worked on the American Dream project. (Opp. Br. at 2). Indeed, Supor made contributions from 2007 through 2015 at rates set forth in the relevant CBAs between Local 560 and the general contractors.[8] (SMF ¶ 10; *see* DE 35-4 at 68–69, 100–01, 135–36, 171–72, 207–09, ). It is further undisputed that this contribution obligation, as specified the PLA, stems from the Letter of Assent Supor signed, which bound the parties until "the expiration of the [PLA] or until [the] scope of Work at the Project is complete, whichever is later." (SMF ¶ 6; DE 41-2; Opp. Br. at 2). Because Supor is "signatory to a contract creating the obligation to contribute," it is an "employer" under the MPPAA for purposes of establishing withdrawal liability. *See Rheem Mfg.*, 63 F.3d at 707.

Second, Supor argues in a similar vein that it is not an "employer" under the MPPAA because there was an alleged oral agreement that Supor would not be liable for withdrawal liability as a result of its work at the "American Dream" project.[9] (Opp. Br. at 4–6). As discussed above, the appropriate inquiry as to whether an entity is an "employer" is "whether the alleged employer had an obligation to contribute and what was the nature of that obligation." *Seaway*, 920 F.2d at 508. Because it was required to contribute, Supor is an employer. Because it is an employer, it is generically subject to withdrawal liability. Any further disputes about the scope of withdrawal liability and the effect of any

---

[8] Specifically, the general contractors are Associated General Contractors of New Jersey and Construction Contractors Labor and Employers of New Jersey.

[9] Petitioner alleges that a separate conversation occurred between Anthony Valdner, and Joseph Supor III, President of J. Supor & Son Trucking & Rigging Co., in which Valdner said that Respondents would not hold Petitioner liable for any additional liabilities, including withdrawal liability, after the scope of Petitioner's work was completed. (*See* Supor Aff. ¶¶ 6–8; Opp. Br. at 2–3).

such oral agreement, are therefore subject to arbitration.[10]

Because Supor's contribution obligation qualifies Supor as an "employer" under the MPPAA, and because the issues in dispute fall within the purview of § 1381 through § 1399 of the MPPAA, the Court finds that disputes between the parties in the instant case are subject to the MPPAA's statutory arbitration mandate. *See* 29 U.S.C. § 1401(a).

## IV. Conclusion

For the reasons discussed above, Respondents' motion for summary judgment is GRANTED. An appropriate Order accompanies this Opinion.

October 9, 2020

/s/ Kevin McNulty

**Kevin McNulty, U.S.D.J.**

---

[10] As I observed in a prior case, the whole purpose of withdrawal liability is to protect the remaining employers and the solvency of the plan, and to forestall a "rush for the exits":

> Under ERISA, as amended by the MPPAA, "if an employer withdraws from a multiemployer pension plan, it incurs 'withdrawal liability' in the form of 'a fixed and certain debt to the pension plan.' " *Concrete Pipe*, 508 U.S. at 609, 113 S. Ct. 2264 (quoting *Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725, 104 S. Ct. 2709, 81 L.Ed.2d 601 (1984) ). The MPPAA was enacted "out of a concern that ERISA did not adequately protect multiemployer pension plans from the adverse consequences that result when individual employers terminate their participation or withdraw." *SUPERVALU, Inc. v. Bd. of Trustees of Sw. Pa. & W. Md. Area Teamsters & Emp'rs. Pension Fund*, 500 F.3d 334, 336 (3d Cir. 2007) (quoting *Warner-Lambert Co. v. United Retail & Wholesale Emp's. Teamster Local No. 115 Pension Plan*, 791 F.2d 283, 284 (3d Cir. 1986) (internal citation omitted) ). It was " 'designed to prevent employers from withdrawing from a multiemployer pension plan without paying their share of unfunded, vested benefit liability, thereby threatening the solvency of such plans.' " *Id.* (quoting *Mfrs. Indus. Relations Ass'n v. E. Akron Casting Co.*, 58 F.3d 204, 205-06 (6th Cir. 1995) ). Accordingly, to "insure[ ] that the financial burden will not be shifted to the remaining employers," a withdrawing employer must pay its fair share of the plan's unfunded liability. *Id.* at 337.

*Manhattan Ford Lincoln, Inc. v. UAW Local 259 Pension Fund*, 331 F. Supp. 3d 365, 380 (D.N.J. 2018), *appeal dismissed*, No. 18-2709, 2018 WL 10759131 (3d Cir. Oct. 9, 2018). That these two, between themselves, could bargain away the withdrawal-liability obligation is problematic. *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185, 195 (3d Cir. 2009).

11